## Caldwell *et ux. versus* Brown *et al.*

1. An employer is not bound to indemnify an employee for losses in consequence of the ordinary risks of the business, nor of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee.

2. The damages for death by negligence, are the pecuniary loss sustained by the parties entitled to maintain the action.

3. In an action against the employers for the death of an operative in a mill by the bursting of the boiler, it was not error to charge, " We cannot say that the negligence of the engineer would entitle the plaintiff to recover, provided he was a skilful engineer and a man of good character as such." Nor, " If the water was too low in the boiler * * it was not the fault of the defendants but of the fireman or engineer; and if so, for the death of the boy, being a co-laborer, the plaintiffs cannot recover."

| 53 | 453 |
| 136 | 123 |
| 53 | 453 |
| 151 | 518 |
| 53 | 453 |
| f 197 | 385 |
| 53 | 453 |
| 198 | 319 |
| 53 | 453 |
| 21 SC | 548 |
| 53 | 453 |
| f 28 SC | 4395 |
| 53 | 453 |
| f 218 | 4120 |

[Caldwell *v*. Brown.]

4. Parents in an action for the death of a minor child, can recover only the pecuniary value of his service during minority; not for their agonized feelings or loss of the son's society.

ERROR to the Court of Common Pleas of *Armstrong county*.

This was an action on the case, commenced July 15th 1863, by Patrick Caldwell and wife against R. L. Brown and others, trading as R. L. Brown & Co., to recover damages for the death of the plaintiff's son, who was killed in the defendants' rolling-mill.

The defendants were owners of a rolling-mill in Kittanning. Daniel Caldwell, the son of the plaintiff, who was a minor, was in the employ of defendants at the mill, in heating nail-iron, and worked at a furnace near the boiler of the mill. The works were started as usual about 6 o'clock on the morning of December 9th 1862, Daniel being then at his place. Not long afterwards, the boiler exploded, several persons were injured and Daniel was killed. There was evidence that the boiler had been taken out by former owners of the mill; had been exposed to the weather for some years; that it had been repaired and replaced by the defendants a few weeks before the explosion. There was evidence also that the water was permitted to get too low in the boiler; that the engineer was told that it was dangerous, and that an engineer can tell whether there is sufficient water in it or not. There was also evidence on the subject of the character and capability of the engineer.

Amongst the points of the plaintiffs were the following:—

3. If the jury believe the boiler was insufficient, or the engineer incompetent or negligent, the plaintiffs are entitled to recover.

To which the court (Buffington, P. J.) answered:—

"The first part of this point is answered in the affirmative; but we cannot say that the negligence of the engineer would entitle the plaintiff to recover, provided he was a skilful engineer and a man of good character as such."

4. If the jury believe the water was permitted to fall to such a degree that the boiler got "red hot," it was gross negligence, and the defendants are liable.

The court answered:—

"We cannot answer this point as requested; if the water was too low in the boiler and the boiler became red hot, whose fault was it? Not that of the defendants or the manager, but that of the fireman or engineer, and if so, for the death of the boy being a co-laborer the plaintiff cannot recover."

10. The measure of damages is not to be confined simply to what wages the deceased might have earned during his minority, but may also include the advantage of his society and assistance at home, out of active labor hours; and also the contingency of his remaining at home and laboring for his parents after he attain-

[Caldwell v. Brown.]

ed his majority, as well as the aid they might reasonably expect from him in their old age, even if he were married.

· The court replied:—

"This point is answered in the negative. It is the pecuniary value of the service of the boy alone during his minority that can be recovered."

Exceptions were taken by the plaintiffs to these answers, and also to the other parts of the charge contained in the assignment of errors.

There was a verdict for the plaintiffs for $200; and they took a writ of error assigning for error the above answers as their 1st, 2d and 3d errors, also as part of the 3d, that the court charged:

"The measure of damages is simply the money value of this boy's services till he arrive at twenty-one years." And,

"4. The court erred in using this language in its general charge: 'So if the injury was caused by the negligence of the party injured or killed, the casualty being attributable to the party himself, there can be no recovery. It was his own fault, and no cause of action would result to himself for an injury he himself had caused, nor to his parents in case of death.'"

"5. The court erred in deciding that the carelessness or negligence of the engineer was not attributable to the defendants, but that they were only chargeable with their own personal negligence and that of their superintendent. That subordinate hands, 'by engaging in the business, mutually take the risk.' And again:— 'The second charge of negligence is that there was not sufficient water in the boiler. The evidence in this is somewhat contradictory. If this be the cause we do not think there can be any recovery then. It was not the duty of the defendants to see to this, nor was it the duty of the manager. Whether it was the duty of the engineer or fireman, and they neglected it, such neglect would not be chargeable to the defendants, unless they were incompetent or unfit, inasmuch as the deceased was a hand employed in the mill, and ran the risk of the negligence of his fellow-workmen. In such case we have seen he has no right to complain, and cannot recover.'"

*J. A. Fulton*, for plaintiffs in error, cited Robinson v. Railroad, 8 Wright 175.

*Golden & Neale*, for defendants in error, cited Morgan v. Vale of Neath Railway Co., 35 L. J. Q. B. 23; Lovegrove v. Lond. Br. & S. C. Railway, and Gallagher v. Piper, Ph. Leg. Int. vol. 21, No. 53; Loonan v. Brockway (N. Y.), Pitts. Leg. Jour. August 2d 1865; Farwell v. Bost. & Worc. Railway, 4 Metc. 36; 1 Am. Lead. Cas. 620, Hare & Wallace's Notes; Ryan v. Cumb.

[Caldwell *v.* Brown.]

Val. Railroad, 11 Harris 384; Frazier *v.* Penna. Railroad, 2 Wright 110; 2 Hilliard on Torts 478, 480; Redfield on Railways, § 3, p. 386–7–8; Act of April 15th 1851, § 19, Purd. 754, pl. 2; Pamph. L. 674; Penna. Railroad Co. *v.* Kelly, 7 Casey 372; Same *v.* Zebe, 9 Id. 318; Same *v.* Vandever, 12 Id. 298.

The opinion of the court was delivered, January 7th 1867, by

READ, J.—In Gilman *v.* Eastern Railroad Corporation, 10 Allen 233, Judge Gray said: " The case presented by this report is to be determined by the application of rules now too well established to require an elaborate statement of the reasons on which they are founded or an extended examination of the authorities by which they are supported.

" A servant by entering into his master's service assumes all the risks of that service which the master cannot control, including those arising from the negligence of his fellow-servants. In case of an injury to one servant by the negligence of another, it is immaterial whether he who causes and he who sustains the injury are or not engaged in the same or similar labor, or in positions of equal grade or authority. If they are acting together under one master in carrying out a common object, they are fellow-servants. The master indeed is bound to use ordinary care in providing suitable structures, engines, tools and apparatus, and in selecting proper servants, and is liable to other servants in the same employment if they are injured by his own neglect of duty. But it makes no difference whether the master is an individual or a corporation; in either case he is responsible to his servants for his own negligence, but not for that of their fellow-servants."

The learned judge then cites the leading cases in his own state and in New York, and the authoritative decisions in the House of Lords, as establishing this to be the law of England, Scotland and in two of the great commercial states of our Union.

There are two late cases in the Exchequer Chamber, decided during 1865, affirming this doctrine in its fullest extent. In Hall *v.* Johnson, 34 L. J. Exch. 222, Chief Justice Erle said on the 8th of February: " We take the principle to be established from a series of decisions in this empire and in America (decisions collected with great skill and clearness by Mr. Manley Smith, in his book on Master and Servant), that where a laborer is damaged by the negligence of a fellow-laborer the master is not responsible:" Smith on Master and Servant, 2d ed. p. 134, &c.; and in Morgan *v.* The Vale of Neath Railway Co., 35 L. J. Q. B. 23, on appeal from the Court of Queen's Bench, on the 27th November, the same doctrine is enunciated by Lord Chief Justice Erle and Lord Chief Baron Pollock, delivering the unanimous opinion of the Exchequer Chamber. In this case the case of Gilshannon *v.* The Stony Brook Railroad Corporation, 10 Cush-

[Caldwell *v.* Brown.]

ing's Rep. 228, is cited at some length in a note. See also Bottomley *v.* Brooks, August 1866, Nisi Prius, by Mr. Justice Lush, 15 L. T. R. N. S. 19 ; Warburton *v.* Great Western Railway Co., 15 L. T. N. S. 361, Exch., decided 17th November 1866. The same rule is laid down in all the late cases in the Court of Appeals of New York : Coon *v.* Syracuse Railroad Co., 5 N. Y. 492 ; Russell *v.* Hudson Railroad Co., 17 Id. 134 ; Shuman *v.* Syracuse and Rochester Railroad Co., Id. 153 ; Boldt *v.* New York Central Railroad Co., 18 Id. 432 ; Wright *v.* Same, 25 Id. 562. And the commissioners of the Code, in their 9th report of the Civil Code of the state of New York, p. 307, § 1006, embody these authorities in that section : " An employer is not bound to indemnify the employee for losses suffered by the latter, in consequence of the ordinary risks of the business in which he is employed, *nor in consequence of the negligence of another person employed by the same employer in the same general business*, unless he has neglected to use ordinary care in the selection of the culpable employee." This is the rule in Pennsylvania as well as in many other states : Ryan *v.* Cumberland Valley Railroad Co., 11 Harris 384 ; Frazier *v.* Pennsylvania Railroad Co., 2 Wright 104 ; Catawissa Railroad Co. *v.* Armstrong, 13 Id. 194 ; O'Donnell *v.* Allegheny Railroad Co., 14 Id. 490. See Hayden *v.* Smithville Manufacturing Co., 29 Conn. 557 ; Mannville *v.* The Cleveland and Toledo Railroad Co., 11 Ohio (N. S.) 407 ; Illinois Central Railroad Co. *v.* Cox, 21 Ill. 38 e ; Moss *v.* Johnson, 22 Id. 633 ; Ohio and Mississippi Railroad Co. *v.* Tindall, 13 Ind. 366 ; Wilson *v.* Madison, &c., Railroad Co., 18 Id. 226.

The damages to be recovered in case of death by negligence are the pecuniary loss sustained by the parties entitled to maintain the action : Penna. Railroad Co. *v.* Zebe, 9 Casey 330 ; Same *v.* Vandever, 12 Id. 298 ; Same *v.* Catharine Henderson, 1 P. F. Smith 315.

The 1st and 5th errors assigned arise from a misconception of the settled law of the land, that the master is not liable to an employee for the negligence of a co-employee ; and of course that the parents of the deceased have no cause of action against the defendants for the loss of the services of their minor son upon that ground. The deceased was a minor son of the plaintiff, and worked at a large rolling-mill of the defendants, at a furnace assigned him, in close proximity to the boiler which furnished the motive power to run the nail factory. When the works started on the morning of the 9th December 1862, Daniel (the decedent) was at his post as usual. They had gone however but a few minutes when this boiler exploded with fearful noise and violence ; several persons were injured, but Daniel was the only one killed. This action was brought against the owners of the mill by his

[Caldwell *v.* Brown.]

parents. The first ground alleged to entitle them to recover we have already disposed of.

There was clearly no error in the answer to the 3d point, which is the 1st error assigned, nor in the answer to the 4th point, which is the 2d error assigned; so in the 4th error, upon the subject of its being caused by the negligence of the party killed, it is clear the court were right in saying, if such were the case, there could be no recovery. The language quoted in this assignment of error is a general statement of the law in the opening of the charge; but in justice to the court, the subsequent part of it, applying it to the case in hand, should have been also stated. "It has been faintly pressed by the defendants, that the boy himself was guilty of such rashness and negligence to his own safety, as at least to bring him within the principle of concurring negligence in two particulars." The second of which was: "That the fire in the heating furnace of the nail factory was under the control of the boy—was on that occasion excessive, and added to the danger."

"As to the second, the jury will decide how the fact was. It is probable that you may arrive at the conclusion that the fire in the heating furnace had nothing, or very trifling effect in causing the explosion. However, if you think you have evidence to satisfy you that it was partially the cause, and that the boy was thus in fault, plaintiffs cannot recover. It seems to me the evidence is very slight to warrant the conclusion; but this is left to the jury." In all this what have the plaintiffs to complain of?

It was argued by the plaintiffs that the knowledge and acts of the manager or superintendent were the knowledge and acts of the defendants, and the court so instructed the jury; and of this instruction no one except the defendants had any cause to complain. The court went certainly as far as they were asked to go, although there are authorities which do not seem to warrant it. In Albro *v.* Agawam Canal Co., 6 Cush. 75, the proprietors of a manufacturing establishment were held not to be responsible to an operative in their employment, for an injury sustained by him in consequence of an accident occasioned by the gross negligence and want of skill on the part of the superintendent of the works, in a matter entirely under his control and management, he being a fit and proper person, and both being engaged in their proper duties at the time of the accident, and the superintendent himself was held not liable in Albro *v.* Jaqueth, 4 Gray 99. In this last case, both are considered as servants in the employment of the same master, in other words co-employees.

The same rule in broader terms is laid down in Wright *v.* N. Y. Central Railroad Co., 25 N. Y. 565, above cited. "The rule exempting this master is the same, although the grades of the servants or employees are different, and the person injured is inferior in rank, and subject to the directions and general control

[Caldwell *v.* Brown.]

of him by whose act the injury is caused." "Personal negligence (that of the master) is the gist of the action. It is not enough that the foreman and general superintendent of the work is guilty of negligence causing injury to the subordinates."

In Southcote *v.* Stanley, 1 H. & N. 247, Lord Chief Baron Pollock said : " The rule applies to all the members of a domestic establishment, so that the master is not in general liable to a servant for injury resulting from the negligence of a fellow-servant; neither can one servant maintain an action against another for negligence whilst engaged in their common employment ;" and in Morgan *v.* Vale of Neath Railroad Co., above cited, the same learned judge said : " I am only desirous to add that it appears to me that if we were to decide this case in favor of the plaintiff we should open the gates to a flood of litigation. In every large manufactory, where a number of workmen are employed in different departments of the same business, we should have it split up into any number of objects, although they all had the one common purpose. Thus in one manufactory the making of screws would be called one object, and the doing woodwork another, and so on, and then a person employed in a superior department would be said to have nothing to do with the porter in the same establishment." There was, therefore, no error of which the plaintiffs could complain, and that is all we need say on this point.

The 3d error is the answer to the plaintiff's 10th point, which is in these words : " That the measure of damages is not to be confined simply to what wages the deceased might have earned during his minority, but may also include the advantage of his society and assistance at home, out of active hours, and also the contingency of his remaining at home and laboring for his parents after he attained his majority—as well as the aid they might reasonably expect from him in their old age, even if he were married."

The court, answering, say : " This point is answered in the negative. It is the pecuniary value of the service of the boy during his minority that can be recovered ;" and in the charge, " If the jury find for plaintiffs, the measure of damages is simply the money value of this boy's services till he arrived at the age of twenty-one years. Plaintiffs are not to be allowed ·for the agonized feelings of parents, nor loss of his society."

This is clearly. the law, and a proper answer to the instruction prayed for : Pennsylvania Railroad Co. *v.* Kelly, 7 Casey 372 ; Same *v.* Zebe, 9 Casey 318 ; 13 Indiana 366.

The jury gave $200 damages, and we see no error of which the plaintiff could complain.

Judgment affirmed.