# Reese v. Clark.

*Negligence—Master and servant—Contributory negligence—Risk of employment—Province of court and jury.*

If a master gives his servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion.

A servant is not called upon to set up his own unaided judgment against that of his superiors. His dependent and inferior position is to be taken into consideration, and if the master gives him positive orders to go on with the work under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous.

In an action by an employee against his employer to recover damages for personal injuries, it appeared that the plaintiff while engaged at work in tearing down a furnace was injured by a plate of the furnace falling upon him. The day before the accident the plate had been loosened, and was laid or inclined against the back of the furnace, which was the only support it then had. Shortly before the plate fell plaintiff was absent about half an hour, and when he returned he found the plate had shifted somewhat from its former position. The defendant who was in personal charge of the work told him to go and pick the brick out of the furnace, and hurry up about it as he did not want the team to stand there. Plain-

tiff suggested that the plate should be taken down first. Defendant then said, " Go and do what I tell you to do, the plates is all right. I am looking after them." Two other persons called the defendant's attention to the dangerous position of the plate. One of these persons was told by defendant to mind his own business, but two years afterwards defendant told this person that if he had taken his advice, the accident would not have happened. Plaintiff obeyed instructions and began to pick up the brick, with his back to the plate. The work in which he was engaged had no connection with the fall of the plate. *Held,* that the question of defendant's negligence and plaintiff's contributory negligence was for the jury.

*Evidence—Opinions of witnesses.*

In those matters where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue, a witness may be allowed to supplement his description by his opinion, to put the jury in position to determine the facts in issue; but when the circumstances are such that they can be fully and accurately described to the jury, and their bearing on the issue estimated by persons without special knowledge or training, opinions of witnesses expert or other are inadmissible.

Argued Oct. 31, 1900. Appeal, No. 167, Oct. T., 1900, by plaintiff, from order of C. P. No. 1, Allegheny Co., Sept. T., 1891, No. 533, refusing to take off nonsuit in case of John Reese v. Frank L. Clark. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Trespass for personal injuries. Before Collier, J.

The facts are stated in the opinion of the Supreme Court.

At the trial Eugene McCarthy, a millwright and a witness for plaintiff, being on the stand and having testified that he saw the condition of the furnace, counsel for plaintiff made the following offer: We offer to prove by the witness on the stand that if plaintiff, in moving the bricks, was working on the foundation that had supported the front plate of this furnace, at least four or five feet away from the foundation on which the plate that fell and hurt him was resting. the removal of these bricks from the front foundation would have no effect whatever in causing the falling of the plate.

Objected to as generally incompetent and irrelevant.

The Court: You may show how he was working and how the location was, and exactly what he did; and then the jury will judge from that whether his act caused it or not.

Objection is sustained, and bill of exception sealed for plaintiff. [2]

Eugene McCarthy, a witness for plaintiff being on the stand and having testified that he was a millwright, and builder of mills, and fully acquainted with the construction of furnaces, and had seen the condition of the furnace in controversy, and the position of the plate shortly before it fell, counsel for plaintiff made this offer:

I want to know whether he, as an expert, knows what was the cause of this falling of the plate, and how it came to fall, what was the cause of the falling of the plate.

Objected to as incompetent and irrelevant.

Objection sustained and bill sealed for plaintiff. [3]

The same witness was asked by counsel for plaintiff the following question:

" If that plate was standing in the position in which you saw it shortly before the accident, and a person had been stationed to watch the plate, could he have given a person in front of it sufficient notice that the plate was about to fall—sufficient warning in advance of the fall of the plate to have allowed him a chance to escape ? "

Objected to as calling for a mere opinion; and not for any facts within the knowledge of the witness; and also because the witness testified that he did not see the plate on the day of the accident, until after the accident.

Objection sustained and bill sealed for plaintiff. [4]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) refusal to take off nonsuit; (2, 3, 4) rulings on evidence, quoting the bill of exceptions; (5) striking out an opinion of the witness McCarthy.

*F. C. McGirr* and *L. P. Stone*, with them *John Marron*, for appellant.—The defendant subjected the plaintiff to danger, which in good faith he ought to have provided against, and ought to be held liable for the injury plaintiff sustained: Patterson v. Pittsburg & Connellsville R. R. Co., 76 Pa. 394 ; Kehler v. Schwenk, 151 Pa. 505 ; Arnold v. Penna. R. Co., 115 Pa. 135 ; Shearman & Redfield on Negligence (5th ed.), sec. 91 ; Lee v. Woolsey, 109 Pa. 124; Kohler v. Penna. R. Co., 135 Pa. 346.

The risk, if any, the plaintiff assumed, did not threaten immediate danger, and was in pursuance of the defendant's promise to protect him, and no negligence is properly attributable to him: Patterson v. Pittsburg & Connellsville R. R. Co., 76 Pa. 394; Brownfield v. Hughes, 128 Pa. 194; Penna. R. Co. v. Peters, 116 Pa. 206; Lee v. Woolsey, 109 Pa. 124; Woodward v. Shumpp, 120 Pa. 458.

*William K. Shiras*, with him *George Shiras, 3d*, and *C. C. Dickey*, for appellee.—In this case the plaintiff knew the condition of the plate, and if there was danger in working in front of it, he assumed the risk of it: Diehl v. Lehigh Iron Co., 140 Pa. 487; Marcan v. New York, Susquehanna & Western R. R. Co., 167 Pa. 223; Devlin v. Phœnix Iron Co., 182 Pa. 114; Moore v. Penna. R. Co., 167 Pa. 497.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901:

We are of opinion that the learned judge of the court below was in error in withdrawing this case from the jury, and in not submitting to them to determine the negligence of the defendant as well as the concurring negligence of the plaintiff.

The testimony produced at the trial and which we must assume to be true, tends to establish the following facts: John Reese, the plaintiff, was a puddler and for many years worked at his occupation in the rolling mills at Cleveland, Ohio. In October, 1886, he and other workmen were engaged in wrecking and tearing down furnaces at one of these mills. He was employed by, and was working for and under the immediate orders of, the defendant. The furnaces were erected in pairs, with the rear plates within eight inches or a foot of each other and resting on the same foundation, which is wider than the front foundation. The front, rear and sides were of cast iron plates bolted together, and were supported by a brick foundation about one foot and a half wide. The distance between the front and rear foundation walls was about five or six feet.

The interior of the furnace was lined with brick, and the top was oval, also of brick. The front and rear plates were held together by connecting rods at the top and bottom of the furnace. At the time of the accident, the plaintiff had been engaged three weeks assisting in tearing down the furnaces, in

removing the connecting rods, cutting the bolts which held the plates together, and in doing such other work as was necessary to completely dismantle the furnaces. He and another employee were at work removing brick from the front foundation of furnace No. 20, on October 30, 1886, when he was seriously injured by the rear plate of that furnace falling upon him. This plate consisted of four plates held together by bolts, weighed at least 1,800 pounds and stood six feet above the foundation. When, the day before the accident, it was disconnected from the front plate by cutting the rods which held them together, it was laid or inclined against the back of the furnace immediately in its rear. This was the only support it then had. The back plates of the two furnaces when perpendicular were three or four inches apart.

Shortly before the plate fell the plaintiff was absent about half an hour at a blacksmith's shop having a chisel sharpened. When he returned he found the plate shifted some from its former position. The defendant then told him to go and pick the brick out of the furnace, to hurry up about it, that he did not want the team to stand there. To this order the plaintiff said, " I will, but the best way is to take them plates down first." The defendant then said, " Go and do what I tell you to do, the plates is all right, I'm looking after them." He received similar instructions from the defendant before he went to the blacksmith shop. At the last interview between the parties in regard to the plate, which was three or four minutes before the plate fell, the defendant was also told by another person that he ought to have the plates down, to which he replied that the plate was all right. His attention was also called to the plate by Eugene McCaffrey a short time before it fell, with the suggestion that it was dangerous to the men working on the furnace, and that if he, McCaffrey, had some lashing he could lash the plate so it would not fall. The defendant very emphatically told McCaffrey to attend to his own business, and that he would attend to the plate. Two years after the accident the defendant also said to McCaffrey that if he had taken his advice, the accident would not have happened.

At the time the plaintiff was injured he was working with his back to the plate removing brick from the front foundation. This work had no effect, however, on the rear foundation on

which the plate was resting. The plate fell on the plaintiff's back and he fell forward on his face, receiving very severe injuries. It was resting on an old foundation, the top of which gave way and caused it to fall.

The learned judge of the court below assigned no reason, so far as the record discloses, for granting the nonsuit, or for refusing to take it off. The appellant's argument suggests that it was because the court thought the evidence in this case was substantially the same as that in Reese v. Clark, 146 Pa. 465. We have therefore stated the facts more fully than we otherwise would have done, so that the difference between the cases may be readily observed. We do not intend to question the doctrine announced by the court when the case was here before; we are merely applying the well settled principles of law to the facts as disclosed in the present case.

It must be apparent from the most superficial view of the testimony in this case that the defendant's action was the proximate cause of the accident to the plaintiff. The work of wrecking the furnaces was done under the immediate orders and supervision of the defendant. He was, therefore, familiar with the work as it progressed, and knew the dangers to which the workmen were subject. He knew the size of the plate in question, that it had been placed in a position very slightly reclining on an old brick wall the day before the accident. He was not only cognizant of these facts which might well have put him on inquiry as to the dangerous place in which he compelled his employees to labor, but he was distinctly notified of the peril to which he was subjecting the plaintiff and the other laborers engaged in dismantling the furnace. Unless, therefore, the plaintiff's negligence contributed to his injury, the defendant should respond in damages for his negligent conduct.

The plate was laid against the rear plate of another furnace the day before the accident, and the plaintiff knew this fact and the position the plate occupied. It is, therefore, contended by the defendant that if there was danger in working in front of it, the plaintiff knew it and assumed the risk. It is undoubtedly true that a servant assumes the risks naturally and reasonably incident to his employment. It will be conceded, also, as determined by all the authorities, that a servant who voluntarily undertakes a perilous employment, the dangerous character of

which he is acquainted with or has the opportunity to learn, assumes the risks naturally and reasonably incident thereto. This doctrine is well settled and generally recognized. But the difficulty here is that these principles are not applicable to the case in hand. Here we have an employee cognizant of an anticipated danger, it is true, but we also have the additional and most material fact that the employer not only knew the danger but in the face of it peremptorily commanded his servant to perform the service with the assurance that the alleged dangerous object was all right, and that he would look after it. The defendant therefore with a full knowledge of the facts, gave the plaintiff to understand that the plate was not dangerous by reason of the position it occupied, and that, by proper precautions, he would protect him from it. The plaintiff had seen this plate standing in this leaning position for more than a day, when the defendant commanded him to continue his work with assurances of protection. The danger therefore was not inevitable or imminent, and hence the plaintiff had a right to engage in the service and assume that the defendant would take the necessary care to protect him. As said by the court in Wagner v. Jayne Chemical Co., 147 Pa. 480, " When the superintendent assured him that they would not hurt him, he had the right to rely on that assurance and return to his work." Instead of performing his duty in this respect by complying with his promise, the defendant had no sooner directed the work to proceed than he left his employees engaged in dismantling the furnace and went to his store. In either of two ways he could easily and readily have prevented the injuries to the plaintiff. The plate could have been thrown down before the plaintiff and his companion were put to work picking out the brick, as suggested by plaintiff, or it could have been made fast to the back plate of the other furnace, as McCaffrey thought should be done. The reason the former course was not pursued is found in the defendant's declaration to Reese to " Hurry up, I don't want that team to wait all day." McCaffrey's advice was not taken, as in the opinion of the defendant the matter did not concern him.

We think the facts in this case bring it within the well recognized rules laid down in the text books and in our own decisions. In Shearman & Redfield on Negligence (5th ed.), sec. 186,

it is said: " The true rule in this as in all other cases is, that if
the master gives the servant to understand that he does not
consider the risk one which a prudent person should refuse to
undertake, the servant has a right to rely upon his master's
judgment, unless his own is so clearly opposed thereto that, in
fact, he does not rely upon his master's opinion. . . . A ser-
vant is not called upon to set up his own unaided judgment
against that of his superiors ; and he may rely upon their ad-
vice and still more upon their orders, notwithstanding many
misgivings of his own. . . . The servant's dependent and in-
ferior position is to be taken into consideration; and if the
master gives him positive orders to go on with the work, under
perilous circumstances, the servant may recover for an injury
thus incurred, if the work was not inevitably or imminently
dangerous." In Patterson v. Pittsburg & Connellsville R. R.
Co., 76 Pa. 393, Mr. Justice GORDON, delivering the opinion of
the court, says: " It is true the master is not responsible for
accidents occurring to his servant from the ordinary risks and
dangers which are incident to the business in which he is en-
gaged; for in such case the contract is presumed to be made
with reference to such risks. But on the other hand where the
master voluntarily subjects his servant to dangers such as in
good faith he ought to provide against, he is liable for any acci-
dent arising therefrom (citing cases). . . . In both these cases
the defects from which the accidents arose were known to the
employees, but as they were injured in the discharge of duties
imposed upon them by their employers, such knowledge was
adjudged not to raise a presumption of concurrent negligence.
This doctrine is obviously just and proper. The servant does
not stand on the same footing with the master. His primary
duty is obedience and if when in the discharge of that duty
he is damaged, through the neglect of the master, it is but
meet that he should be recompensed. The general principle as
recognized by our own cases, inter alia, Caldwell v. Brown,
53 Pa. 453, and Frazier v. Penna. R. Co., 2 Wright, 104, is
that the employer is bound to furnish and maintain suitable
instrumentalities for the work or duty which he requires of his
employees, and failing in this he is liable for any damages flow-
ing from such neglect of duty. . . . But where the servant in
obedience to the requirement of the master incurs the risk of

machinery, which though dangerous is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident." Mr. Justice TRUNKEY, delivering the opinion of the court in Lee v. Woolsey, 109 Pa. 127, says : " When the plaintiff was hurt he was working under the eye and voice of his employer who was urging speed, and saying, ' All right.' He might have looked to see whether the planks were removed, and he might have taken time to have placed the jack rafter at the foot of the gin pole before starting the horse ; but is it reasonable to exact such care of a laborer when his employer suddenly comes into the place of a foreman, personally directs the work, and gives empathic orders to move quickly ? The care to be exacted of the plaintiff is just that which laborers of ordinary prudence would exercise under like circumstances, and if the plaintiff did exercise it, his action shall not be defeated on the ground of concurrent negligence."

Applying these principles to the case in hand, we think the learned court should have submitted to the jury defendant's negligence and the plaintiff's contributory negligence. It may be, as urged by the defendant, that the plaintiff's testimony in this case in some important particulars is different from what it was in the former case in which his right to recover for his injuries was denied ; but if so, the remedy is with the jury, under proper instructions from the court below. We must determine the rights of the parties as disclosed by the testimony brought up with this record.

The other assignments relate to the rejection by the court below of the opinions of certain witnesses called by the plaintiff. The testimony was properly excluded on the authority of Graham v. Penna. R. Co., 139 Pa. 149, and numerous other cases which follow it. In Graham v. Penna. R. Co., it was held that " in those matters where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue, a witness may be allowed to supplement his description by his opinion, to put the jury in position to determine the facts in issue. But when the circumstances are such that they can be fully and accurately described to the jury, and their bearing on the issue estimated by persons without special knowledge, or

training, opinions of witnesses, expert or other, are inadmissible." There was no difficulty whatever in the witnesses in this case describing the conditions prevailing at the place and time of the accident so as to enable the jury to determine the facts sought to be elicited by the opinions of the witnesses.

The second, third, fourth and fifth assignments are overruled and dismissed; the first assignment is sustained and the judgment is reversed with a venire facias de novo.