## Whitley *v.* Evans, Appellant.

*Negligence—Master and servant—Evidence.*

In an action by an employee against his employers to recover damages for personal injuries, it appeared that at the time the accident occurred plaintiff and two other workmen were engaged, under the immediate directions of one of the defendants, in rolling a heavy and unwieldy wheel into the defendants' machine shop. All three of the workmen had been engaged in a similar work on former occasions. In passing through a somewhat narrow space one of the workmen stepped aside, leaving the wheel to be supported by the other two. Almost instantaneously the wheel toppled over and plaintiff was injured. It appeared that before coming to this space, the workman who had stepped aside had previously left the wheel in charge of the other two, in order to close a door, and that during his absence the two workmen maintained the wheel in an upright position. *Held,* that the evidence was insufficient to convict the defendant of negligence.

Argued Oct. 13, 1905.   Appeal, No. 99, Oct. T., 1905, by defendants, from judgment of C. P. No. 4, Phila. Co., March T., 1902, No. 3088, on verdict for plaintiff in case of John Whitley, by his next friend, Margaret Davis, v. William Evans, Robert Evans and John H. Evans, trading as John Evans & Sons. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Trespass to recover damages for personal injuries.   Before AUDENRIED, J.

The facts are stated in the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*George L. Crawford,* of *Crawford & Loughlin,* for appellant, cited : Elliott v. Allegheny Co. Light Co., 204 Pa. 568; Willis v. Armstrong Co., 183 Pa. 184; Gaughan v. Phila., 119 Pa. 503; Durst v. Carnegie Steel Co., 173 Pa. 162; Krause v. Plumb, 195 Pa. 65 ; Reese v. Clark, 198 Pa. 312; Cunningham v. Bridge Works, 197 Pa. 625.

*Paul Reilly,* for appellee, cited: Reese v. Clark, 198 Pa. 312; Williams v. Clark, 204 Pa. 416 ; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543; Wallace v. Henderson, 211 Pa. 142; Lee v. Woolsey, 109 Pa. 124.

OPINION BY ORLADY, J., January 13, 1906 :

The defendants are manufacturers of car spring machinery, and the plaintiff had been in their employ for three months prior to the happening of the accident complained of in this action. Shortly before ending their day's work on December 24, 1901, one of the defendants directed the plaintiff and two other laborers to bring from the pavement into the machine shop a balance or fly wheel weighing from 500 to 600 pounds, five feet in diameter, and having a rim face of five or six inches. The moving of the wheel was under the personal supervision of John H. Evans, one of the defendants. It was rolled from the pavement up a slight incline a distance of about ten feet, then turned at right angles to its first course and rolled some four feet, and then at right angles again a few feet when they came to a space between two pieces of machinery, which were distant from each other from eighteen to thirty inches as stated by the plaintiff's witnesses. One of the laborers, Trumbold, was in front of the wheel, and the plaintiff at the back, each facing the other and holding the wheel in an upright position with their hands and knees. Kensel, the other workman, not being

able to pass through the space by the side of the wheel, where he had been aiding the others, was obliged to leave that place to step around one of the machines, so as to resume his part of the work of balancing the wheel.   Kensel testified that he had moved but a foot or two, when, almost instantaneously, the wheel toppled over and fell on Whitley, resulting in breaking his leg.   Kensel and Trumbold were not inexperienced laborers, as each had been working with the plaintiff in that shop for some time prior to the accident, and each testified that he had been engaged in similar work on former occasions, and was familiar with the general location of the machines, as well as with the floor over which they rolled the wheel.   Not more than five minutes elapsed from the time they took charge of the wheel until the plaintiff was hurt.

Under the undisputed facts, the immediate and proximate cause of the injury was the act of Kensel in leaving the wheel to be kept in motion by the plaintiff and Trumbold.   It is conceded that it was not possible for him to pass, by the side of the wheel, through the space between the two machines, and the plaintiff admits that he saw him leave his place to go around the machine.   It is undisputed that just after the men entered the shop from the street, Kensel left the wheel on the incline, to the care of Whitley and Trumbold, while he, Kensel, went back to close the door, and that during his absence the two workmen maintained the wheel in an upright position. The appellee urges that, the master being in command during the whole progress of the work, and when the wheel reached a dangerous position, he left them without special orders, hence he was negligent in his duty to them, and further, that if Kensel's direct negligence contributed to the accident it was still for the jury to say whether the master was not also negligent.

The definition of negligence and the determination of the standard of duty being always a matter of law for the court: (Custer v. Balt. & Ohio R. R. Co., 206 Pa. 529) we feel that the plaintiff's right to recover is barred by the facts shown by his own testimony.   The three men had performed similar services before; they were familar with the instrumentalities used, and the place where the work was to be done.   No special skill was called for, no machinery or appliances were involved, and

the three men with their unaided strength to be applied with
ordinary judgment and common sense could easily handle the
wheel, while two could hold it stationary, as they had done so
but a moment before.    While a crane was sometimes used to
handle the wheels in the shop they were also sometimes rolled
in.    The plaintiff and his coworkmen had as full knowledge
of the place in which they were working, and of their ability
to do it as had their employer.    The course to be taken and
the final location of the wheel were given by the employer;
but urging the men to hurry up with the work, was not exact-
ing more of them than their duty, and did not increase the dan-
ger of their labor, which at that time was wholly within their
joint control.    The most that could have been expected of the
master at the moment Kensel left the wheel to the care of the
others, would have been to have told them to halt until Kensel
could get to the other side.    The propriety for so doing was as
well known to the plaintiff as to the defendant in charge of the
work, and it is so apparent that neither believed that such an
order was necessary, nor that the space was not sufficient for
the wheel to be passed through in safety.    The proximate
cause and the unexpected accident conjoined at almost the
same instant of time, and under the circumstances neither
could have been reasonably anticipated by either master or serv-
ant.    The master could not be charged with negligence, un-
less he had notice, actual or constructive, of the danger, at least
long enough before the injury was inflicted, to have enabled
him to form an intelligent opinion as to the means by which
the injury might be avoided, and to apply an appropriate rem-
edy.    He was not bound to take into account the contingency,
that a reasonably competent and qualified servant would fail
to use ordinary care.    Up to the point of Kensel's leaving the
wheel, the workmen were not in any special danger through
any act of negligence of the master, and he was not guilty of
any breach of duty in expecting that the plaintiff and Trumbold
would do the very thing he had seen them do but a moment
before,—to hold the wheel stationary while Kensel left it nec-
essarily.    It was the master's duty to see that suitable instru-
mentalities were provided and safely used ; this duty was dis-
charged under the facts in this case in the light of their expe-
rience in similiar work.    While the concurring negligence of a

fellow servant with the negligence of the master will not relieve the master of liability (Kaiser v. Flaccus, 138 Pa. 332; Wallace v. Henderson, 211 Pa. 142) the character of the work in which the servant is engaged often furnishes the reasonable measure of duty of each. The moving of the heavy and unwieldy wheel was an operation requiring care to. prevent its toppling over, and this was plain to any man of ordinary intelligence. "It was held in Titus v. Bradford, etc., R. R. Co., 136 Pa. 618, that an employer performs his duty when he furnishes appliances of ordinary character and reasonable safety, and the former is the test of the latter, for in regard to the style of the implement or nature of the mode of performance of any work, ' reasonably safe ' means safe according to the usages, habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence ; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business : " Cunningham v. Bridge Works, 197 Pa. 625.

In Reese v. Clark, 198 Pa. 312, the servant was cognizant of an anticipated danger, and the added material fact that the master not only knew of the danger, but, in the face of it peremptorily commanded his servant to perform the service with the assurance that the alleged dangerous object was all right, and that he would look after it. With full knowledge of the facts he gave the plaintiff to understand that the place was not dangerous by reason of the position it occupied, and that, by proper precautions, he would protect him from it. These vital facts distinguish that case from the one before us, as no instructions in regard to how the wheel was to be handled were given by the master; that phase of the work being entirely left to the judgment of the workmen, who knew of the course they were taking and were just as qualified to see and decide whether they should proceed or desist, as the master. In that case (Williams v. Clark, 204 Pa. 416) the Supreme Court say : "We think the defendant's negligence is apparent from the testimony and that it must have been so regarded on the trial of the case." In this one we cannot find any evidence on which to charge the defendants with an omission of duty, and the judgment is reversed.