## Sage *v.* Lehigh Valley Railroad Co., Appellant.

*Negligence—Railroads—Master and servant—Dangerous occupation—Coupling cars by hand—Instructions—Orders of person in charge of work—Reliance upon superior—Act of June 10, 1907, P. L. 523.*

1. In an action against a railroad company to recover damages for personal injuries suffered by an employee, it appeared that the latter was employed as a flagman on a work train, and at times helped make up trains; that on the morning of the accident he was directed to assist in switching out a certain car, which had to be uncoupled, involving the use of a cut lever; and that the lever was out of order; at peremptory direction of the conductor, under whose orders he was, and upon the latter's express assurance that there was no danger, he reluctantly undertook to uncouple the car by hand; and that while so doing he was injured by the sudden starting of the train. It further appeared from the evidence that the plaintiff was inexperienced in cutting cars by hand, and had received no instruction from the defendant as to the proper method of severing the coupling in the manner in which he was ordered to do it or as to how to avoid the danger. It also appeared that in order to uncouple cars it was necessary to bump them together, and that therefore there is danger in uncoupling them by hand; and that the train in question was backed up on signal before plaintiff was hurt. *Held*, the case was for the jury and a verdict for plaintiff was sustained.

2. In such a case, the fellow-servant rule cannot be invoked by the defendant, since the case falls within the terms of Section 1 of the Act of June 10, 1907, P. L. 523.

Argued March 18, 1913.   Appeal, No. 409, Jan. T., 1912, by plaintiff, from judgment of C. P. Bradford Co., Feb. T., 1910, No. 80, on verdict for plaintiff, in

case of Grover Sage v. Lehigh Valley Railroad Co.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before CAMERON, P. J., specially presiding.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $8,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant, and in refusing defendant's motion for judgment non obstante veredicto.

*Edwin P. Young,* for appellant.

*Charles M. Culver,* with him *David E. Kaufman,* for appellee.

OPINION BY MR. JUSTICE POTTER, May 12, 1913:

In this action the plaintiff sought to recover damages for personal injuries resulting from the negligence of the defendant company. The testimony shows that the plaintiff was seventeen years old at the time of the accident, and was employed by defendant as flagman on a work train. At times he also helped to make up trains. He went to work at the upper depot in Towanda, on the morning of December 21, 1907, while it was still dark. He was directed to assist in switching out a certain car called a rail loader, which was standing on a siding. It was necessary to uncouple the rail loader. This involved the use of what is known as a cut lever, at the end of the car, which is operated from the outside of the car, and while standing outside of the track. When the lever is pulled, it raises the locker of the coupling, and releases the car. Upon this occasion when plaintiff tried to pull the cut lever he could not do so. It was bent in the center, which made it bind against the end

of the car, and it was disconnected with the chain that raised the locker. He reported this condition to the conductor, and was then told to "go inside and cut them by hand," meaning that he should go inside the track and between the cars. When he did not at once move to do so, he was again roughly ordered by the conductor to cut the cars, and do it quick if he wanted to work. The conductor further said that it was perfectly safe to do so. Plaintiff then went between the cars, took hold of the chain and was trying to pull it up when the cars came together, and his left arm was caught between the bumpers and crushed so that it had to be amputated. It appears from the evidence that plaintiff was without experience in cutting cars by hand, and had received no instructions from the defendant as to the proper method of severing the coupling in the manner in which he was ordered to do it. He had not before the accident seen anyone disconnect a coupling by hand. When he reached in to pull the pin out, the cars were standing still, and after he had taken hold of the pin and was endeavoring to pull it out, the cars moved and his arm was caught. It appeared that the rail loader had been in the yard four or five days before the accident. The inspector of cars employed by the defendant testified that he saw the rail loader within an hour after the accident, and that the lever was bent somewhat so that it would not work. He also said that the rail loader had been in the yard four or five days before the accident, and that he was reprimanded by the yard master because during that time the lever had not been fixed. Counsel for plaintiff also offered in evidence certain printed rules of defendant company to the effect that the trainmen and flagmen while on duty are under the direction of the conductors. The questions of defendant's negligence, and plaintiff's contributory negligence were submitted to the jury, and a verdict in favor of the plaintiff was returned. Motions for a new trial and for judgment for defendant notwith-

standing the verdict were overruled, and judgment was entered. Defendant has appealed.

The first and third assignments of error are to the refusal by the court below of defendant's point asking for binding instructions, and to the refusal to enter judgment for defendant n. o. v. That the cut lever was defective and would not do the work for which it was intended is not disputed. The evidence was sufficient to warrant a finding by the jury that the defect had existed long enough to charge the defendant with notice of the condition, and that proper inspection of the appliance was not made. But it does not appear that the condition of the lever was known to the plaintiff just before the accident. He was not in any way misled by the condition of the lever. He knew it could not be used for the purpose for which it was intended, and he reported that fact to the conductor, and in obedience to the orders of the conductor, then given, he went between the cars for the purpose of uncoupling them by hand. The actual and proximate cause of the injury to the plaintiff was therefore his own act in endeavoring to uncouple the cars by hand. He acted not upon his own volition, but rather reluctantly, at the direct order of the conductor. The evidence shows that he was without experience in uncoupling cars by hand, and that he had received no instructions as to how to do it. He testified that the conductor assured him that he could pull the pin by hand in safety, saying to him, "The cars won't move, and it is perfectly safe." Under these circumstances it was a question for the jury, under proper instructions, to determine whether the conductor was negligent in directing the plaintiff to uncouple the cars by hand, without cautioning him against the danger of the operation, and whether such negligence was the proximate cause of the injuries which he received. The evidence tends to show that the plaintiff hesitated to go between the cars and uncouple them by hand, and that he only did so on the express assurance of the con-

ductor that the cars would not move at the time, and
that he would be perfectly safe.   Yet they were moved,
and apparently a slight movement was necessary to un-,
couple them.   No instructions were given plaintiff as
to how to avoid the danger, and no precautions appear
to have been taken for his protection.   In Kearns v.
Steel Co., 230 Pa. 328, our Brother MESTREZAT said (p.
331) : "It is the duty of an employer not only to in-
struct an employee, ignorant of the dangers incident to
his work by reason of age, inexperience or other causes,
but also to point out to him how those dangers may be
avoided."

The fellow-servant rule cannot be invoked by appel-
lant in this case.   It falls clearly within the terms of the
Act of June 10, 1907, P. L. 523, in section one of which
it is provided that "the negligence of a fellow-servant
of the employee shall not be a defense, where the injury
was caused or contributed to by......the negligence of
any person in charge of or directing the particular work
in which the employee was engaged at the time of the
injury or death; the negligence of any person to whose
orders the employee was bound to conform, and did con-
form, and by reason of his having conformed thereto,
the injury or death resulted."   Here the conductor was
in charge of the work of making up the train which was
being performed at the time.   By the rules of the com-
pany, the plaintiff was under the direction of the con-
ductor, and obliged to obey his orders.   He did so, and
by reason thereof he was injured.   It was a question of
fact for the jury to decide whether or not the order was
negligently given, coupled as it was with the assurance
to the plaintiff that there was no danger.   The witness,
William Zurn, offered by defendant testified that in
order to uncouple cars it is necessary to bump them to-
gether, in order to take off the strain, and slacken them
up, and that by reason of the bumping of the cars to-
gether there is danger in uncoupling them by hand.
The plaintiff also testified that after he went between

the cars to uncouple them he saw the conductor give a signal with his lantern, and the brakeman on the train testified that before the accident he got a signal to back the train, and communicated it to the engineer, and that the engine did back up before plaintiff was hurt. In Glew v. Pittsburgh Railways Co., 234 Pa. 239, the plaintiff, a motorman, suggested to his superior officer that it would be dangerous to run the kind of load he was hauling over the tracks in the condition in which they were. He was ordered to proceed, and in carrying out the directions the tracks separated, causing an accident which injured the plaintiff. In that case, in an opinion adopted by this court, it was said (p. 241): "If the servant suggests the danger and the master says or does that which leads the servant to believe that his fears are not well founded and that the master's judgment is that, notwithstanding the defect, the tracks can be safely used, the servant has a right to rely upon the superior judgment of his master, and if he does and injury happens, the master is liable." The rule is more elaborately stated in 1 Shearman & Redfield on Negligence (5th Ed.) § 186, where it is said: "A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding any misgivings of his own....... The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous." This statement of the principle involved was thus quoted with approval, and applied in Reese v. Clark, 198 Pa. 312.

There is no merit in the fourth assignment, in which complaint is made of the inadequacy of the charge as a whole. If further or more specific instructions were desired, they should have been requested at the time.

Special opportunity for this was given by the trial judge, at the close of the charge.

The assignments of error are overruled, and the judgment is affirmed.