# Levy *v.* Rosenblatt, Appellant.

*Negligence—Master and servant—Notice of danger—Acids.*

An employer is bound to exercise reasonable precaution against injury to his employees while they are in his service and obeying his orders. Not only must he provide suitable implements and means with which to carry on the business which he assigns them, but he must warn them of all dangers to which they will be exposed in the course of their employment, except those which the employee may be deemed to have foreseen as necessarily incident to the employment in which he engages, or which may be open and obvious to a person of his experience and understanding, and also such as the employer cannot be deemed to have foreseen. The employer will be presumed to be familiar with the dangers latent as well as patent, ordinarily accompanying the business which he is conducting.

If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that in fact he does not rely upon his master's opinion.

In an action by an employee against his employer to recover damages for personal injuries, the case is for the jury where the evidence tends to show that the plaintiff, a common laborer without knowledge of English, was placed at work at etching glass eggs in a solution of hydrofluoric acid; that he received no instructions as to his work, except by some signs; that he had no knowledge of the dangerous effect of hydrofluoric acid on the hands, or on the nose, throat and lungs when its fumes are inhaled; that these dangers were known to the defendant; that plaintiff

used his naked hands in dipping the eggs in the solution, and that he received very serious injuries as a result of his work.

Argued Oct. 15, 1902. Appeal, No. 84, Oct. T., 1902, by defendants, from judgment of C. P. No. 3, Phila. Co., June T., 1900, No. 244, on verdict for plaintiff in case of Simon Levy *v.* Harry M. Rosenblatt, William B. Landauer and Emanuel H. Massman, trading as H. M. Rosenblatt & Company. Before RICE, P. J., ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. The facts appear by the opinion of the Superior Court.

*Emanuel Furth* and *George S. Graham*, with them *Jacob Singer*, for appellant.—To hold the defendant liable the injury must be such a direct and immediate consequence of the negligence as under the surrounding circumstances of the case a person of ordinary care and prudence might and ought to have foreseen as likely to follow from the negligence: Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469; Scheffer v. Washington City, etc., R. R. Co., 105 U. S. 249; Pollock on Torts, 36, 37; Shearman and Redfield on Negligence, sec. 739; Corcoran v. Wanamaker, 135 Pa. 496.

*A. T. Freedley*, with him *Bernard Pockrass* and *Ulysses S. Koons*, for appellee.—If the business is one with which the employee is not familiar, he has a right to expect that its dangers will be pointed out to him, and that he will be instructed in those things necessary for him to know in order to his own safety. He cannot be held to assume the risk of dangers, the existence of which he has no knowledge: Rummel v. Dilworth, 131 Pa. 509; Ross v. Walker, 139 Pa. 42; Wagner v. Jayne Chemical Co., 147 Pa. 475; Bannon v. Lutz, 158 Pa. 166; McCray v. Sterling Varnish Co., 7 Pa. Superior Ct. 610; Lebbering v. Struthers, 157 Pa. 312.

OPINION BY ORLADY, J., December 13, 1902:

The plaintiff was employed in the defendants' factory for

several months as a porter or common laborer, when, on March 14, 1900, he was transferred to another department, where he assisted in etching or bisquing opal glass eggs. This mechanical result was secured by submerging the glass into a tank containing a solution of hydrofluoric acid, consisting of fifty-two parts of hydrofluoric acid, forty-eight parts of water, and twenty-five parts of carbonate of ammonia, the effect being to make the glass bisque or opaque, after which the eggs were placed by the etcher on a board and dried, the acid drippings draining back into the acid tank, and after the eggs became dry, it was the duty of the plaintiff to wash them in another tank, known as the water tank, which was about six feet long, two and a half feet deep, and two and a half feet wide, and a hollow plug or tube which extended up into the tank from ten to eighteen inches was placed in the bottom. The tank was supplied with hot and cold water through pipes, the flow being regulated by faucets, so that when fresh water was introduced the depth was regulated by the plug or tube in the bottom. The acid was highly volatile, and to carry off the fumes a metal hood that communicated with a chimney or a pipe was constructed over the tank. The etcher at the acid bath was protected in doing his work by wearing rubber gloves. The plaintiff used his naked hands in washing the eggs as they came to him from the drying board, the acidity of the water depending on the number of eggs washed in the bath and the change made by introducing fresh water. The plaintiff was a foreigner, did not speak English, and was not acquainted with the character of the solution, nor had he any knowledge of its chemical composition or the effect of inserting his hands in the liquid or inhaling the gas therefrom. The etcher who had charge of the work at both tanks, when asked what instructions had been given to the plaintiff, stated: "I gave him all the instructions that any person could possibly give him. In the first place, I commenced to tell him and I found out he couldn't understand. Then, I talked in motions, and turned on the water, and as I did so made motions to him that that should run all the time. I was talking at the same time and then I turned the water off, and motioned, no. And I showed him the same thing with the steam, if it got cold from the water running, then to turn it on." The plaintiff worked for two days at rinsing or washing the

glass eggs, and from the testimony shows that he was very seriously affected. The first effects were an active inflammation and swelling of the hands and face, which continued to the time of the trial, and resulted in permanent wrist drop or paralysis of the wrist joints. This action is brought to recover for the injuries received. From the testimony of the defendants' witnesses it is apparent that the acid, when applied to the outer surface of the skin, produced burns that resulted in abscesses and were more painful than an ordinary burn or scald, accompanied by severe pain and irritation and itchings; and that the inhalation of the gas produced irritation in the nose, throat and lungs. These facts, which the defendants had attempted to provide against, were well known as complaints had been made directly to them and also, through their foreman. From all the evidence, it must be conceded that the employment of the plaintiff was more or less dangerous, depending on the dilution of the hydrofluoric acid and the skill with which the workman kept the water changed in the water bath, and further that there was nothing to indicate to an unlearned and unskilled laborer the character or degree of this risk; that it was not so obvious to one in the plaintiff's condition that he should be held to have voluntarily assumed any risks in the use of the water. There was a conflict of testimony as to the frequency with which the water was changed and the effect on the employees in using the water charged with the hydrofluoric acid, and whether the water in which the plaintiff was working did produce the injury complained of, but with that phase of the case we have nothing to do, as it has been disposed of by the verdict. The etcher, chemist and physician, called by the defendants, clearly established the fact that there was a certain amount of risk taken by those who washed the eggs in the water bath, both from immersing their hands in the water and from inhaling the fumes of the acid vapors from that bath. The water bath was so acid in character as to prevent the use of a brass pipe on account of its being rapidly corroded, and even the iron pipe used for the plug in the bottom was corroded by the acid so that, as one witness expressed it, " every day it would eat shorter." The tank could have been entirely emptied by pulling out the stand pipe plug, but unless this was done the volume of water below the level of the top of the stand pipe was not substantially changed in

its character by introducing fresh water into the top of the tank, as it would run out through the overflow, and it appears that the hydrofluoric acid was lighter than water and to a large degree rested on the surface of the water into which the plaintiff would necessarily put his hands in the discharge of his duties. The appellant urges that under all the evidence the court below should have directed a verdict for the defendants. After a careful examination of all the testimony, we feel that this was clearly a case for the jury and is practically ruled by Wagner v. The Jayne Chemical Co., 147 Pa. 475. It is well settled that an employer is bound to exercise reasonable precaution against injury to his employees while they are in his service and obeying his orders. Not only must he provide suitable implements and means with which to carry on the business which he assigns them, but he must warn them of all the dangers to which they will be exposed in the course of their employment, except those which the employee may be deemed to have foreseen as necessarily incident to the employment in which he engages, or which may be open and obvious to a person of his experience and understanding, and also such as the employer cannot be deemed to have foreseen. The employer will be presumed to be familiar with the dangers latent as well as patent, ordinarily accompanying the business which he is conducting. Authorities upon these points may be found in great abundance in the notes in sections 185 to 203 of Shearman and Redfield on Negligence. In the use of an agency sufficiently acid to corrode iron and brass, and to destroy the surface of glass by mere immersion in it the employer should be held to as high a degree of caution and instruction as in cases of dangerous or complicated machinery or explosive articles. When an inexperienced employee is placed in charge of dangerous machinery, with the use of which he is unacquainted, it is the positive duty of the employer to instruct and properly qualify him for such new service. It is his duty to see that the employee is instructed and warned of such dangers and that he is instructed in the use and care of the machinery with which his labor brings him in contact: Lebbering v. Struthers, Wells & Co., 157 Pa. 312. The rule has been frequently stated to be that the master is not responsible for accidents occurring to his servant from the ordinary risks and dangers which are incident

to the business in which he is engaged, for in such case the contract is presumed to be made with reference to such risks. But when the master subjects his servants to dangers such as in good faith he ought to provide against, he is liable for any accident arising therefrom. The servant does not stand on the same footing with the master; his primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the negligence of the master, it is but meet that he should be recompensed. The true rule in this, as in all other like cases, is that if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that in fact he does not rely upon his master's opinion: Caldwell v. Brown, 53 Pa. 453; Reese v. Clark, 198 Pa. 312; McCray v. Sterling Varnish Co., 7 Pa. Superior Ct. 610.

Corcoran v. Wanamaker, 185 Pa. 496, does not apply to the case before us for the reason that there was no evidence in that case to show that the defendants knew that the use of acids complained of would produce the disease from which the plaintiff suffered. In the present case all the witnesses called by the defendants testified that the use of this acid produced external and constitutional injuries, similar in kind although more mild in degree than those from which this plaintiff suffered, which facts were well known to the defendants prior to the placing of the plaintiff in this position of special hazard. The case was fairly submitted to the jury, the assignments of error are overruled, and the judgment is affirmed.