# Maines, Appellant, *v.* Harbison-Walker Company.

*Negligence—Master and servant—Dangerous machinery—Risk of employment—Notice to master.*

In an action by an employee against his employer to recover damages for personal injuries, the plaintiff testified that he considered the cogwheels on a machine at which he worked were dangerous, and that he had complained

of it to the defendant's master mechanic. In reply he was told by the master mechanic that the latter would like to change the position of the cogwheels, but that the superintendent would not give him time to do so, but, he added, "I will change them on Sunday." The change was not made then, and thereafter plaintiff repeatedly called the attention of the master mechanic to the condition of the cogs. He testified that he did this as often as three or four times a week during a period of some six weeks, and that the answer was that the change would be made on Sunday, when the machinery was idle. Finally, on a certain Monday, plaintiff again called attention to the fact that the change had not been made, and again the promise was renewed, that the cogwheels would be changed the following Sunday. The plaintiff continued to work during that week. On the succeeding Monday morning he went to the mill at a very early hour, about three o'clock in the morning, as was his duty, and he then found that the promise had again been broken, and no change in the position of the cogwheels upon the emptier had been made. He began work, however, and during the manipulation of the machinery in the effort to get it started, the sleeve of his right arm caught in the cogs, his arm was drawn in, and so badly mangled, that amputation was necessary. *Held*, that it was error to enter a compulsory nonsuit.

Under the peculiar circumstances of this case, the conclusion as to whether the plaintiff was negligent in continuing his work on the morning of the accident, was a question of fact, which should have been left to the determination of the jury.

Argued Oct. 10, 1905. Appeal, No. 183, Oct. T., 1905, by plaintiff, from order of C. P. Cambria Co., Sept. T., 1902, No. 263, refusing to take off compulsory nonsuit in case of Daniel Maines v. The Harbison-Walker Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was order refusing to take off nonsuit.

*Thomas H. Greevy*, with him *Charles Geesey* and *A. V. Dively*, for appellant.—A time limit in which to repair even if made cannot absolve the employer from liability for an accident that may occur after that, if the employer has acted in such a manner with the employee as to inspire him with confidence that the danger will be remedied. The only question

then is, did the employee in continuing the operation of the machine after the alleged time limit rely upon the promises of the employer that the danger would be remedied? And this question is solely for the jury: Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Patterson v. R. R. Co., 76 Pa. 389; Reese v. Clark, 198 Pa. 312; Williams v. Clark, 204 Pa. 416; Held v. American Window Glass Co., 207 Pa. 534; Fick v. Jackson, 3 Pa. Superior Ct. 378; Schiglizzo v. Dunn, 211 Pa. 253; Ross v. Ry. Co., 8 Fed. Repr. 544; Conroy v. Vulcan Iron Works, 6 Mo. App. 102; Rothenberger v. Milling Co., 57 Minn. 461 (59 N. W. Repr. 531); Republic Iron & Steel Works v. Gregg, 71 S. W. Repr. 900; Illinois Steel Co. v. Mann, 100 Ill. App. 367; Rice v. Eureka Paper Co., 66 N. E. Repr. 979; Illinois Cent. R. R. Co. v. North, 97 Ill. App. 124; Webster v. Coal & Coke Co., 201 Pa. 278.

*R. A. Henderson*, for appellee.—A servant may rely on the promise of his master to repair defects in the place where the labor is to be performed only so long as is reasonably necessary to make the repairs, and if he continues in his employment after the lapse of such time he will be considered to have waived the defects and to have assumed the additional risk: Illinois Steel Co. v. Mann, 170 Ill. 200 (48 N. E. Repr. 417); Hough v. Ry. Co., 100 U. S. 213; Eureka Co. v. Bass, 81 Ala. 200 (8 So. Repr. 216); Dowd v. R. R. Co., 57 Atl. Repr. 248; Houston City v. Owen, 67 S. W. Repr. 788; McClusky v. Coal Co., 61 N. E. Repr. 804; Stalzer v. Packing Co., 84 Mo. App. 565.

Where a servant after the master's failure for a reasonable time to repair defective machinery as promised continues in the service, he cannot recover for a consequent injury: Stalzer v. Jacob Dold Packing Co., 84 Mo. App. 565.

The authorities hold that where no definite time is fixed by the parties in which to repair, the servant may continue at work a reasonable time without assuming the risk: Illinois Steel Co. v. Mann, 170 Ill. 200 (48 N. E. Repr. 417); Harris v. Hewitt, 64 Minn. 54 (65 N. W. Repr. 1085); Counsell v. Hall, 145 Mass. 468 (14 N. E. Repr. 530); Hough v. Ry. Co., 100 U. S. 213.

Where the parties fix a definite time, and the servant con-

tinues to work after that time knowing that the repairs have not been made, and that the promise of the master has been broken, then it is for the court to determine as a matter of law that the servant has assumed the risk: Trotter v. Furniture Co., 101 Tenn. 257 (47 S. W. Repr. 425) ; Eureka Co. v. Bass, 81 Ala. 200 (8 So. Repr. 216).

While the general rule as to the assumed risk by a servant of the dangers that he is aware of, is settled by many decisions of the courts of this state, the law as to the exception of the master's promise to repair has not been as fully developed as it has been by the courts of other states. The exception to the general rule, to wit, the master's promise to repair, is recognized in a number of decisions in this state, but no mention is made as to what length of time the master has to make the repair, or whether the servant reassumes the risk after the promise to repair has been broken: Patterson v. R. R. Co., 76 Pa. 389 ; Brownfield v. Hughes, 128 Pa. 194 ; Webster v. Coal & Coke Co., 201 Pa. 278 ; Fick v. Jackson, 3 Pa. Superior Co. 378 ; Madara v. Iron & Steel Co., 160 Pa. 109 ; Schiglizzo v. Dunn, 211 Pa. 253.

The exception to the general rules is founded upon a promise, either expressed or implied. A mere complaint by the servant to the master will not vary the general rule : Nuss v. Rafsnyder, 178 Pa. 397 ; Diehl v. Lehigh Iron Co., 140 Pa. 487.

OPINION BY MR. JUSTICE POTTER, January 2, 1906 :

The Harbison-Walker Company is engaged in the manufacture of fire brick and owns works at Blandburg, Cambria county, Pa. During the process of manufacture at these works, the fire clay, after being ground, was placed in circular pans for the purpose of mixing. The mixed clay was formerly shoveled out of the pans by hand, and placed upon trucks to be conveyed to the molds. But later, an improvement was introduced, called a " pan emptier " to carry the mortar from the pans to the trucks. This emptier consisted of a frame, carrying a revolving belt, passing around a roller at each end. The belt was operated by cogwheels at the upper end. Three pans were in use by the defendant, at this place, each pan having an emptier. The plaintiff was a pan tender; and was in charge of pan No. 3. The cogwheels upon the emptier at

this pan, were upon the side next to the workman. It appears from the evidence that there was no necessity for the cogwheels to be so placed, but that they could just as well have been changed, so as to be at the back of the belt, or upon the far side of it, from the pan tender. In fact they were so placed upon the " emptiers " at the other two pans used by the defendant company. The change in position of the cogwheels could easily have been made at any time when the machinery was at rest. The only danger from the cogwheels being upon the outside or front·of the belt, was the liability to the workmen of getting caught between the wheels, as they revolved.

The plaintiff had worked for years about the premises and was familiar with the machinery. He testified that he considered the arrangement of the cogwheels on this particular emptier, as dangerous; and that he had complained of it to the master mechanic. In reply he was told by the master mechanic that he would like to change the position of the cogwheels but that the superintendent would not give him time to do so. But he added " I will change them on Sunday." The change was not made then, and the plaintiff testifies that he thereafter called the attention of the master mechanic to the condition of the cogs repeatedly; as often as three or four times a week during a period of some six weeks, and that the answer was that the change would be made on Sunday, when the machinery was idle. Finally, on Monday, April 29, 1901, the plaintiff again called attention to the fact that the change had not been made, and again the promise was renewed, that the cogwheels would be changed the following Sunday. The plaintiff continued to work during that week. On the succeeding Monday morning, May 6, he went to the mill at a very early hour, about three o'clock in the morning, as was his duty, and he then found that the promise had again been broken, and no change in the position of the cogwheels upon the emptier had been made. He began work, however, and during the manipulation of the machinery in the effort to get it started, the sleeve of his right arm caught in the cogs, his arm was drawn in, and so badly mangled, that amputation was necessary.

This action was brought to recover for the damages thus caused. Upon the trial, a compulsory nonsuit was entered, upon the ground that the plaintiff by continuing to work with

dangerous machinery after the time, when he was promised that the dangerous condition should be remedied, took the chances, and could not recover for the negligence of his employer. It is conceded by counsel for the appellee, that the question as to whether the defendant was negligent, and whether the danger from the cogwheels was so imminent and obvious, that a man of ordinary prudence would refuse to work about them, were questions for the jury. But it is contended that the master mechanic promised to make the change at a definite time, that is, on Sunday, and when he failed to do so, the servant was not justified in continuing to work, except at his own risk. It must be noted, however, that the evidence does not show that the promise was limited to any particular or definite Sunday. But the Sunday following each complaint seems to have been intended, as the next convenient season, to make the change. The plaintiff says that the promise was made to him, time after time, and that he continued to work upon the strength of the promise, which was apparently renewed from week to week. The question, therefore, is whether the plaintiff was negligent in continuing to work in the face of the fact that not only one promise of the employer had been violated, but a series of them. Or to put it in another way, had he at the time of his hurt, any reasonable expectation of the fulfillment of the promise, which had been made and broken, and renewed and broken, a number of times before? It is not disputed that, if no exact or specified time is fixed, for the restoration of safe conditions, the suspension of the master's right to avail himself of the defense of the servant's knowledge of the defect, continues for a reasonable period. What that reasonable period is, would ordinarily be a question of fact for the jury.

Under the peculiar circumstances of this case, we feel impelled to hold that in spite of the plaintiff's knowledge that the fulfillment of the promise had again been delayed, it was still an open question whether he was not justified in continuing to perform his duties. Had but one promise been given, and that one broken; had there been no renewals of the assurance previously given, from time to time, the case would be different. Certainly it was within the power of the master to take upon himself the risk of the work, and beyond doubt, the effect of the promise was to assume that risk, during the period

covered by the promise. This protected the plaintiff until the morning upon which he was hurt. For clearly he worked under the promise until the close of the week, on Saturday. The change was to have been made under the last promise, upon the next day, Sunday. The plaintiff went to work before daylight on the following morning, Monday, and was hurt, almost immediately. Until then he had no opportunity to know that the change had not been made. We cannot say, therefore, that the mere fact that he observed immediately after the expiration of the time fixed, that the cogwheels had not yet been changed, and that he did not then (in consequence) at once refuse to go on with his work, is to be treated as controlling this case, as a matter of law. We think that under the peculiar circumstances here shown, the conclusion as to whether the plaintiff was negligent in continuing his work at the time, was a question of fact, which should have been left to the determination of the jury.

The assignment of error to the refusal to take off the compulsory nonsuit is sustained. The judgment of the court below is reversed, and a writ of procedendo is awarded.