# Bowen, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Master and servant—Risk of employment—Contributory negligence—Railroads.*

When one person enters the employ of another there is an implied contract that he assumes such risks as are ordinarily incidental to that employment, and to have notice of all such risks as are or ought to be open and obvious to a person of his experience. He assumes this risk in advance at the very inception of his contract of employment and it continues so long as that relation exists.

An injured party cannot recover if guilty of contributory negligence, because by his own act he has intervened between the negligence of the defendant and the injury received in such a manner as to break the causal connection.

In an action by a brakeman against his employer, a railroad company, to recover damages for personal injuries, binding instructions for the defendant are proper where it appears that the plaintiff was injured in alighting from a car by coming in contact with a telegraph pole close to a switch, that the plaintiff knew of the location of the pole, had previously notified the supervisor of the yard about it, and two minutes before the accident had warned the engineer that he would be hit by the pole if he did not take his head in from the engine window, and that the plaintiff could have avoided the accident if he had exercised reasonable care in alighting from the car.

Argued Oct. 25, 1907. Appeal, No. 113, Oct. T., 1907, by plaintiff, from judgment of C. P. Venango Co., Aug. T., 1905, No. 44, on verdict for defendant in case of Charles E. Bowen *v.* Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries.

CRISWELL, P. J., gave binding instructions for defendant. In his charge he stated the circumstances of the accident to be as follows :

It appears from the testimony of the plaintiff that there was a pole erected near one of the switches of the defendant company. When that pole was placed there does not appear. .

The plaintiff, however, knew of it on and prior to December 30, 1904; he says so, and he says that on that date he called the attention of the supervisors to it, that that pole was too near the tracks. He says the supervisor promised to have the matter remedied; he further says that he was not in the neighborhood of the pole again until January 20 following; he didn't know whether it had been removed or not; this was his testimony in chief, and that on the 20th he was injured.

On the part of the defendant Mr. Thompson, the engineer in charge of the shifting engine in the yard, was called, and he testified that on the same evening the plaintiff was injured, and about five minutes before he was injured, and possibly not to exceed two minutes before the accident happened, that the plaintiff, as he was moving the engine along, called to him to take his head in, that he would be hit by that pole; Mr. Thompson says the plaintiff was then about twenty-five feet from the pole. Another witness, Mr. McMullin, testifies that the plaintiff said he had been notifying everybody about the pole; this was some little time before the accident; he is unable to fix the exact time of it, but it was some time before the accident.

In rebuttal, the plaintiff comes on the stand and admits that he was on the side of the train upon which the pole was located, and he says he was about two car lengths from the pole, and that when in that position he did call to the engineer to take his head in, endeavoring to warn him against the proximity of the pole and the danger of being hurt. Now, it appears that notwithstanding these facts and his knowledge that the pole was there, which cannot be questioned in view of this evidence, that he went on the car after it was disconnected from the engine, took his position on the front platform of the car as it was going, applied the brakes, and while the way was open for him to go down on the other side of the car, and while the car was still moving but almost stopped, in fact he says it went only about two feet after he got off, he got off on the side of the car next the pole, right at the point where the pole was located, in such a shape as to be immediately caught between the pole and the car.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Henry P. Nevins,* with him *John M. McGill,* for appellant.—The case was for the jury : Patterson v. R. R. Co., 76 Pa. 389 ; Maines v. Harbison-Walker Co., 213 Pa. 145; Bentley v. Cranmer, 137 Pa. 244.

*John L. Nesbit,* with him *Orr Buffington* and *P. M. Speer,* for appellee.—Plaintiff was guilty of contributory negligence : Bellows v. Canal & R. R. Co., 157 Pa. 51 ; Fulford v. Lehigh Valley R. R. Co., 185 Pa. 329 ; Mansfield Coal, etc., Co. v. McEnery, 91 Pa. 185 ; N. Y., L. E. & W. R. R. Co. v. Lyons, 119 Pa. 324 ; Haven v. Bridge Co., 151 Pa. 620 ; Mulherrin v. D., L. & W. R. R. Co., 81 Pa. 366 ; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600 ; Davis v. B. & O. R. R. Co., 152 Pa. 314.

OPINION BY MR. JUSTICE ELKIN, January 6, 1908 :

In the consideration of this case some confusion has arisen in properly defining and understanding the doctrines of assumption of risk and of contributory negligence. It should always be borne in mind that defenses growing out of these doctrines are separate and distinct, resting upon entirely different grounds and not dependent upon each other. In Priestley v. Fowler, 3 Mees. & W. 1, decided in 1837, and a leading case on this question, it was laid down as a principle that a servant assumes all the ordinary risks which are incidental to his employment. Since that time this doctrine has been universally applied by the courts in which the common law is the prevailing system of jurisprudence. While the text-writers and the courts have not always given the same reason for the foundation of the rule, the weight of authority bases it upon the contractual relation existing between the parties. It seems but reasonable to hold that when one person enters the employ of another there is an implied contract that he assumes such risks as are ordinarily incidental to that employment, and to have notice of all such risks as are, or ought to be, open and obvious to a person of his experience. In theory, at least, the employee is presumed to have

waived any right of action he might otherwise have for injuries received, if such injuries result from the risks and dangers of the employment in which he is engaged. He assumes this risk in advance at the very inception of his contract of employment, and it continues so long as that relation exists. In this state the law is settled that an employee, in accepting the employment, assumes all risks ordinarily incidental thereto, and all other risks, open and obvious, the dangerous character of which he has had an opportunity to observe : Dooner v. Canal Co., 171 Pa. 581 ; Boyd v. Harris, 176 Pa. 484 ; Nuss v. Rafsnyder, 178 Pa. 397 ; Fulford v. Lehigh Valley Railroad Co., 185 Pa. 329.

The application of this rule would be the end of appellant's case except for the allegation that he had reported the dangerous location of the pole to the supervisor, who had promised to remove it. Assuming this to be a fact, it is argued that where a master makes a promise to repair he, and not the servant, assumes the risk between the time of the promise and the time for its fulfillment, and for a reasonable length of time thereafter. Patterson v. Railroad Co., 76 Pa. 389 ; Maines v. Harbison-Walker Co., 213 Pa. 145 ; Foster v. Steel Co., 216 Pa. 279, are relied upon to support this contention. On the other hand, it is denied by the supervisor that such a conversation took place or such promise was ever made. It is urged that the promise, even if proven, was not made by anyone having authority to represent the defendant company, and would not be sufficient in law to bind it. If the case turned upon the question of the assumption of risk, in our opinion it would be for the jury to determine, under proper instructions by the court, whether appellant had given notice of the dangerous location of the pole to an employee or officer of the company, whose promise to remove could bind it, and whether he had continued in his employment relying upon the promise to remove the danger complained of.

The case is not controlled by the question of assumption of risk, but the right to recover depends upon whether appellant was guilty of contributory negligence. As has been hereinbefore stated this is an entirely separate and distinct defense, in no way connected with or dependent upon the question of the assumption of risk. An injured party cannot recover if guilty

of contributory negligence because by his own act he has intervened between the negligence of the defendant and the injury received in such a manner as to break the causal connection. This is the theory upon which most of the authorities base the doctrine. In its application to the facts of a particular case it means that the complaining party cannot recover damages on account of injuries received, no matter if the evidence produced at the trial clearly shows the defendant to be guilty of negligence, if it also appears that the negligence of the injured party contributed to the injuries for which he asks to be compensated. In other words, the law will not permit him to recover from some other party on the ground of negligence if his own act of negligence contributed to the injuries for which he seeks damages. It must then be determined whether the appellant here was guilty of contributory negligence. What are the facts? Appellant was a brakeman or switchman in the yards of the defendant company at Oil City, and must be presumed to have known the exact location of the switches, lines, poles and other appliances in that yard. He did know the exact conditions, as is shown by his own testimony. He saw a certain pole located so close to one of the tracks as in his judgment to make it dangerous. He notified the engineer and other employees of this alleged danger. On the evening when the accident occurred, just as the engine approached the pole he notified the engineer to look out for the pole. This is proof positive that he knew it was still there. At that time he was in a safe position and by the exercise of ordinary and reasonable care, a duty resting on him at all times, he could have avoided the danger about which he notified others. He also had the opportunity of getting off his car at the opposite side from the pole, where he would have been in a place of safety, and if he had done so would not have been injured. Under these circumstances the case is squarely ruled by Burns v. Johnstown Passenger Railway Company, 213 Pa. 143. In that case the rule was stated in the following language : " If he knew the danger, and he did, and could have avoided it by reasonable care, and of this there is no doubt, it was his duty to do so, and having failed to perform his duty in this respect, he was guilty of contributory negligence and there can be no recovery in this case."

Under the facts of this case we hold that appellant was guilty of contributory negligence in not avoiding the danger with which he was familiar and which he could have avoided by the exercise of reasonable care.

Judgment affirmed.