# Hartman *v.* Reading Wood Pulley Company, Appellant.

*Appeals—Amount in controversy—Interest—Jurisdiction of Superior Court.*

1. Where in an action of trespass judgment was entered on a verdict in favor of the plaintiff for the sum of $1,500 with interest from a date stated, an appeal lies to the Superior and not to the Supreme Court.

*Negligence—Master and servant—Dangerous machine.*

2. When a servant in obedience to the master incurs the risk of machinery, which though dangerous is not so much so as to threaten immediate injury, or it is reasonably probable may be used safely by extraordinary cautions, the master is liable for a resulting accident.

3. When a servant remains in the service of his master, after he has knowledge of the dangerous condition of the place in which he is engaged, he is presumed to assume the risk of the danger, but this presumption is rebutted if the master promises to repair the defect and the danger is not so obvious or imminent but that negligence can fairly be imputed to the servant for exposing himself to it.

4. In an action by an employee against his employer to recover damages for personal injuries sustained while working at a dangerous machine, the plaintiff testified that on several occasions he had complained of the absence of a certain safety appliance, and that his employer had promised to provide it. Defendant denied that any such promise had been made, although admitting the complaints. The evidence was conflicting as to whether such an appliance was necessary. The evidence was also conflicting as to whether the machine was out of adjustment. *Held*, that the case was for the jury, and that a judgment on a verdict for plaintiff should be sustained.

Argued Nov. 11, 1908. Appeal, No. 152, Oct. T., 1908, by defendant, from judgment of C. P. Berks Co., June T., 1906, No. 63, on verdict for plaintiff in case of John A. Hartman v. Reading Wood Pulley Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Endlich, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

588 HARTMAN v. READING W. PULLEY CO., Appellant.

Verdict and judgment for plaintiff for $1,500, with interest from April 19, 1907.

*Error assigned* was in refusing binding instructions for defendant, and in discharging rule for judgment in favor of defendant non obstante veredicto upon the whole record.

*John B. Stevens*, with him *Garrett B. Stevens* and *Rick & Nicolls*, for appellant.—There was no evidence of negligence beyond the happening of the accident: Sandt v. North Wales Foundry Co., 214 Pa. 215.

This case is ruled by Alexander v. Penna. Water Co., 201 Pa. 252, and Price v. Lehigh Valley R. R. Co., 202 Pa. 176.

The plaintiff assumed the risk by continuing to work with full knowledge of the alleged defect in the machine: Diehl v. Iron Co., 140 Pa. 487; Green, etc., St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103; Sykes v. Packer, 99 Pa. 465; Phila., etc., R. R. Co. v. Hughes, 119 Pa. 301; Maines v. Harbison-Walker Co., 213 Pa. 145; Reese v. Clark, 198 Pa. 312; Patterson v. R. R. Co., 76 Pa. 389; Webster v. Coal & Coke Co., 201 Pa. 278.

The court below should have converted the rule for judgment n. o. v. into a rule for a new trial: Gring v. Burkholder, 2 Woodw. 82; Bond v. R. R. Co., 218 Pa. 34.

*Isaac Hiester*, with him *B. Y. Shearer*, for appellee.—This case is not within the jurisdiction of the Superior Court and the appellee is entitled to have it remitted to the Supreme Court.

The case was for the jury: Sopherstein v. Bertels, 178 Pa. 401; Valentine v. Colburn Co., 10 Pa. Superior Ct. 453; Fitzpatrick v. Riley, 163 Pa. 65; Patterson v. R. R. Co., 76 Pa. 389; Brownfield v. Hughes, 128 Pa. 194; Reese v. Clark, 198 Pa. 312; Webster v. Coal & Coke Co., 201 Pa. 278; Williams v. Clark, 204 Pa. 416; Held v. American Window Glass Co., 207 Pa. 534; Maines v. Harbison-Walker Co., 213 Pa. 145.

OPINION BY BEAVER, J., February 26, 1909:

On April 17, 1907, a verdict was found by the jury in favor of the plaintiff for $1,500. A few days thereafter a motion for

judgment n. o. v. was filed, which was discharged June 20, 1908, and, upon the thirtieth of the same month, the verdict fee was paid and "judgment entered on verdict in favor of the plaintiff for the sum of $1,500, with interest from April 19, 1907."

If the interest had been included with the verdict, the judgment would have exceeded $1,500 and would have been beyond the jurisdiction of this court. The question of jurisdiction under the facts as stated was submitted, without argument by the parties. We are all of the opinion that this court has jurisdiction. It is fixed by the Act of June 24, 1895, P. L. 212, as amended by the Act of May 5, 1899, P. L. 248, sec. 1 (c). The act of 1895 provides, sec. 7: "The said court shall have no original jurisdiction except that it may issue writs of habeas corpus, but it shall have exclusive and final appellate jurisdiction of all appeals which are now allowed to the Supreme Court in the following classes of cases:" Clause (c). Said section was amended by the first section of the act of 1899 as follows: "Any action, claim, distribution or dispute of any kind in the common pleas, at law or in equity, whether originating therein or reaching that court by appeal or certiorari from a justice of the peace or alderman or magistrate, if the subject of the controversy be either money, chattels, real or personal, or the possession of or title to real property, and if also the amount or value thereof really in controversy be not greater than fifteen hundred dollars, exclusive of costs, and if also the action be not brought, authorized or defended by the attorney general in his official capacity."

It is also provided in sec. 4 of the act of 1899: "In any suit, distribution or other proceeding in the common pleas or orphans' court, if the plaintiff or claimant recovers damages, either for a tort or for a breach of contract, the amount of the judgment, decree or award shall be conclusive proof of the amount really in controversy, but if he recovers nothing, the amount really in controversy shall be determined by the amount of damages claimed in the statement of claim, or in the declaration."

It was held in Prentice v. Hancock, 204 Pa. 128: "Under the Act of May 5, 1899, P. L. 248, on appeal from a decree or judg-

ment for the payment of money in any court or any form of action, the amount in controversy is determined for purposes of jurisdiction by the amount of the decree or judgment." See also Astwood v. Wanamaker, 209 Pa. 103; May's Estate, 218 Pa. 64.

The judgment in this case was entered for the amount and as of the date of the verdict—$1,500—and this, in accordance with the act of assembly and the interpretation thereof, as in the cases cited above, fixes the jurisdiction.

The two assignments of error raise but a single question. The defendant asked the court below to say that the verdict should be in its favor and this having been refused that judgment should be entered for the defendant n. o. v. This was also denied and the double refusal assigned for error.

The case turns upon practically a single fact: Was the machine operated by the plaintiff and in the operation of which the accident, for the recovery of damages for which this suit is brought, in proper condition for safe operation and was the defendant responsible therefor? The testimony in regard to the condition of the machine and as to the immediate cause of the accident was conflicting and was undoubtedly for the jury, if there was anything in the case to be submitted to them. There is no complaint as to the manner in which it was submitted and we do not well see how there could be. The charge of the court below was unusually full, but very clear and absolutely unbiased. The testimony of the plaintiff was that he operated a machine called a planer or jointer in the manufactory and under the direction of the defendant; that, by reason of the absence of a set screw, which was a material part of the machine, one of the horizontal tables, upon which the material to be planed was pushed toward the revolving knives which constituted the planer, was liable to drop or sag one-sixteenth of an inch or less; that, by reason thereof, when short or cross-grained pieces were fed to the head in which were the revolving knives, the tendency was to cut deeper than was safe and, in case of cutting against the grain, to drive the block being planed backward from the machine. This was what actually happened to the plaintiff, and, inasmuch as it was necessary for his left hand to rest upon

the block, in order to keep it in contact with the planer, when the block was thrown back, his hand went into the machine, and when his shirt sleeve was caught, the revolutions were so rapid that he was unable to withdraw it, his arm was drawn into contact with the knives and was cut off four or five inches below the elbow. The testimony of the plaintiff was that he had frequently complained to both the manager and foreman of the absence of the set screw and the consequent unsafe condition of the machine. He attempted to remedy the absence of the set screw by the use of a wedge or a beveled block, as one of the witnesses described it, which, as he alleged, when in place, kept the horizontal table in proper relation to the revolving knives. When this wedge or block became displaced, he was usually able to tell of the changed conditions by the sound, but his testimony shows that, on the occasion when the accident occurred, the displacement of the block and the deep cut of the knife into the cross-grained block which he was endeavoring to plane were practically simultaneous and that no notice was given him of its displacement, so that it could be remedied.

The testimony of the plaintiff is that he had not only complained to the general manager and foreman of the absence of the set screw, but that the latter "said he would get it put in, but he didn't get it put in." The latter, being called as a witness for the defendant, said that the plaintiff had complained to him once or twice in regard to the absence of the set screw, but said in reference to the complaint on cross-examination: "Q. How often did he speak to you about it? A. I remember him speaking to me about it. Q. How often? A. I cannot say that; maybe once. Q. Maybe a dozen times? A. No, sir, I don't remember more than once or twice. Q. Once or twice? A. Not more than that. Q. That many times you remember? A. Yes, sir, I remember him saying something about the set screw being out. Q. What did you tell him? A. I told him that that had nothing at all to do with his machine. Q. Did you ever tell him you would get it fixed? A. No, sir. Q. Did you ever tell him to put the wooden wedge in? A. No, sir. Q. Or to keep it in? A. No, sir. Q. You don't know who put the wooden wedge in? A. Only from what he said himself. Q. Have you any reason

to doubt that what he said was correct on that subject? A. No, sir."

In his examination in chief by the defendant, the general manager was asked: "Q. Did you ever receive any complaints that, by reason of the set screw being missing, the back table lowered? A. No, sir. Q. Did he ever complain to you that it was dangerous, by reason of the absence of the set screw? A. No, sir. Q. Did he complain to you that the set screw was missing? A. Yes, sir, he mentioned that fact to me. Q. What did you tell him? A. I said I would see Mr. Waid about it. Q. Did you ever put any in there? A. No, sir. . . . Q. Did you do anything in the repair of the machine? A. No, sir. Q. In the construction part of it? A. No, sir, we always depend on Mr. Waid to do that. He had entire charge of that; Mr. Waid we believe is an expert in that line. Q. He is an expert in the line of machinery? A. Yes, sir, and repair work."

There was, therefore, a conflict of testimony as to the fact that the machine was out of adjustment and that the set screw had anything to do with keeping it adjusted, that the horizontal table upon which the machine was fed was out of alignment, that the defendant had notice of the defect and that its responsible representative promised to remedy it. It was admitted by the general manager, as shown by the testimony quoted above, that the plaintiff gave him notice in regard to the alleged defect and that he said he would see Mr. Waid about it. Assuming that the plaintiff was mistaken as to the promise to remedy or repair, and that the language used was what is said by the general manager, what did that mean and what was the idea conveyed to the mind of the plaintiff by the language used? This was for the jury, whose province it is not only to weigh and determine conflicting evidence, but also to interpret the meaning of the language used by witnesses in their oral testimony.

The appellants strenuously urge that, if the machine operated by the plaintiff was dangerous, he had the exclusive charge of it, knew of the danger, was responsible for its maintenance and repair and was, therefore, according to his own showing, guilty of contributory negligence. It appears by the testimony of both plaintiff and defendant that the defendant's manager and fore-

man both insisted, and they also insisted at the trial, that the machine was not out of order and could not be so, by reason of the absence of the set screw, which they claim had nothing to do with the alleged defect, as claimed by the plaintiff, and the accident which resulted therefrom. Whilst admitting that complaint was made, or at least that their attention was drawn to the absence of the set screw, they deny also that any promise or offer to replace the set screw or to have the alleged defect remedied was made by them. It is undoubtedly true that, "If the instrumentality by which the servant is to perform his duty is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master is not liable for resulting damages, the servant being in such case guilty of concurrent negligence," but it is also true that, "When the servant, in obedience to the master, incurs the risk of machinery, which though dangerous is not so much so as to threaten immediate injury, or it is reasonably probable may be used safely by extraordinary caution, the master is liable for a resulting accident:" Patterson v. P. & C. R. R. Co., 76 Pa. 389. To the same effect is Brownfield v. Hughes, 128 Pa. 194; Reese v. Clark, 198 Pa. 312; Williams v. Clark, 204 Pa. 416; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543.

"When a servant remains in the service of his master, after he has knowledge of the dangerous condition of the place in which he is engaged, he is presumed to assume the risk of the danger, but this presumption is rebutted if the master promises to repair the defect and the danger is not so obvious or imminent but that negligence can fairly be imputed to the servant for exposing himself to it:" Webster v. Monongahela River Consolidated Coal & Coke Co., 201 Pa. 278; Held v. American Window Glass Co., 207 Pa. 534; Maines v. Harbison-Walker Co., 213 Pa. 145.

The evidence as to the dangerous character of the machine is conflicting. It is conceded that the defendants did not consider the machine dangerous and communicated this opinion to the plaintiff. The testimony as to the promise to remedy the effect of the loss of the set screw is also conflicting, but was such as to be necessarily submitted to the jury.

There was no motion for a new trial, and what the court might have done in the event of such a motion can only be conjectured, although it is evident from the charge of the court, that the case was regarded as a very close one, and so we regard it, but we cannot see how it could have been withheld from the jury.

Judgment affirmed.